UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT LAUDERDALE DIVISION

CASE NO. 23-CV-60093-JEM

RED DRAGON PARTNERS, LLC,

    Plaintiff,

        vs.

TRUTHMD, LLC;
GEMMA CUNNINGHAM;
CHARLES D. ROSEN;
GARY L. WILSON; and
MORGAN ST. JOHN,

    Defendants.
_____/

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTIONS TO DISMISS**

    Defendants, TruthMD, LLC ("TruthMD" or the "Company"), Gemma Cunningham, Morgan St. John, Gary L. Wilson, and Dr. Charles D. Rosen (collectively "Defendants") reply in support of their Motions to Dismiss as follows:

**I.**     **INTRODUCTION**

    At its core, Red Dragon's Opposition demonstrates that this matter should be litigated in Delaware. Red Dragon attempts to avoid this inevitable conclusion by making new claims that it did not actually receive the Operating Agreement underlying its claims. Not so. Red Dragon acknowledged receipt of the Operating Agreement roughly five years prior to the institution of this litigation, and record evidence in the Delaware Action demonstrates that it had the Operating Agreement in its possession within days of its 2020 purchase of three Units in TruthMD. Thus, Red Dragon had – at least – an opportunity to become acquainted with the Operating Agreement

and the Forum Selection Clause contained therein. This means that the matter can only proceed in the state or federal courts of Delaware.

As to the liability of Rosen, Wilson, and St. John, the Opposition demonstrates that there is none. The Opposition demonstrates that Red Dragon is merely relying on general allegations of Rosen, Wilson, and St. John's role as directors, without any plausible allegations that they actually controlled or participated in the alleged liability-causing conduct. This warrants dismissal of the claims against them under the Securities Act, and the common and state law claims fail for the same reason.

## II. THE FORUM SELECTION CLAUSE WAS COMMUNICATED TO RED DRAGON AND IS ENFORCEABLE

Red Dragon does not contest that the Forum Selection Clause encompasses the claims made in the Complaint. Instead, it claims that it did not sign the Operating Agreement, and that the forum selection clause contained therein was not effectively communicated to Red Dragon. Neither is accurate. Rather, Red Dragon acknowledged receipt of the Operating Agreement[1] in 2017 when it purchased its first Unit of the Company and again in 2020 when it purchased three additional Units. Documentary evidence further indicates that Red Dragon unequivocally received the Operating Agreement on October 11, 2020.

Red Dragon had the Operating Agreement. Even if it did not receive it until October of 2020, it had the opportunity to avail itself of its contents for three years before that. It certainly knew of the Operating Agreement in 2020 when it unquestionably possessed it and then sued upon it. Red Dragon cannot now disclaim its contents.

---

[1] The Company has had an Amended and Restated Limited Liability Company Agreement, a Third Amended and Restated Limited Liability Company Agreement, and Fourth Amended and Restated Limited Liability Company Agreement during the pendency of Red Dragon's membership. Each of these contain an identical forum selection clause and Defendants shall therefore refer to these agreements as the "Operating Agreement" except where necessary to delineate which specific document is being addressed.

### A. Red Dragon Received the Forum Selection Clause Prior to Purchasing Its Shares.

Red Dragon's claim that the Operating Agreement "was never provided to Red Dragon, either directly, by link, or otherwise," is simply not accurate. As a threshold matter, Red Dragon, through its principal Dr. Gupta, acknowledged receipt of the Operating Agreement when it purchased its first shares in 2017. *See* Ex. 1, Membership Interest Purchase Agreement. What's more, e-mail correspondence readily available from the Delaware litigation indicates that Dr. Gupta requested and received the Operating Agreement in October of 2020, approximately a month before he sued upon it. *See* Ex. 2, E-mail Correspondence. Thus, Red Dragon's unpled, unsworn claim that it did not receive the Operating Agreement is simply not credible, and is insufficient to carry its burden in any case.

Initially, on February 14, 2017, when Red Dragon purchased its first membership interest in TruthMD, it signed a Membership Interest Purchase Agreement. In this MIPC, Dr. Gupta represented or acknowledged:

- "Buyer has received and read the Limited Liability Company Agreement of the Company."

- "THE COMPANY WILL FURNISH WITHOUT CHARGE TO EACH UNIT HOLDER WHO SO REQUESTS. A COPY OF THE LIMITED LIABILITY COMPANY AGREEMENT."

- "Upon execution of this [MIPC], Buyer shall, automatically and with no further action of the Company or Buyer be … subject to all of the terms and conditions and restrictions of the Limited Liability Company Agreement Company Agreement as if Buyer had executed such document directly."

*See* Ex. 1.  That is, over five years ago, Red Dragon acknowledged receipt of the Operating Agreement, recognized that Operating Agreements were available upon request, and acknowledged that it was signing on to the Operating Agreement.

This happened again in late September of 2020, when Red Dragon opted to purchase three additional shares by way of a Subscription Agreement, Dr. Gupta, made the following representations or acknowledgments:

- "The Purchaser … has full power and authority to execute and deliver this Subscription Agreement, the Amended and Restated Limited Liability Company Agreement … and the Member Signature Page … and such … entity has the full right and power … to become a member in the Company pursuant to the Limited Liability Company Agreement."

- Red Dragon "agree[d] to all of the terms and conditions of the Amended and Restated Limited Liability Company Agreement … and agrees to be bound thereby."

*See* Ex. 2.  A few days later, documents readily available from discovery in the Delaware Action confirm that Red Dragon absolutely had the Operating Agreement in its possession by October 11, 2020, when it was transmitted by Cunningham.  *Id*.

Moreover, Red Dragon sued upon the Operating Agreement.  *See* Ex. 3, Delaware Complaint.  There, Red Dragon averred, that TruthMD was governed by the Operating Agreement, that TruthMD breached the Operating Agreement, and that certain of the Defendants here breached their fiduciary duties under that Agreement.  *Id*. at.  ¶¶ 13, 73-86, and 107-111.  Red Dragon then amended the Delaware Complaint and alleged that the Third and Fourth LLC Agreements were "identical" for the purposes of that lawsuit and maintained its fiduciary duty claims.  *See* Ex. 4, Amended Complaint at pp. 4-5, fn. 1 and ¶¶ 98-105.  In *this* case, Red Dragon continues to rely upon the Operating Agreement, alleging that it governs its series of shares and acknowledging that

it governs Defendants' fiduciary duties.  *See* D.I. 1 at ¶¶ 19, 20, and 110; p. 26, fn. 1.  Red Dragon's continued pursuit of litigation emanating from the Operating Agreement makes it illogical to now protest the enforceability of the Forum Selection Clause.

### B. Red Dragon Had At Least Constructive Notice of the Forum Selection Clause.

Putting aside the fact that Red Dragon unequivocally had the Operating Agreement for years before filing this lawsuit, Red Dragon's multiple acknowledgments of the Operating Agreement mean that it cannot now disclaim its contents.

Indeed, whether a forum selection clause was reasonably communicated "to a consumer"[2] involves a two part test that "takes into account the clause's physical characteristics and whether the plaintiff[] had the ability to become meaningfully informed of the clause and to reject its terms."  *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).  Thus, "[i]t is not unreasonable to require a consumer to take extra steps to access the terms and conditions of a contract."  *Smith v. Mt. Hawley Ins. Co.*, 2022 WL 16856418, at *3 (M.D. Fla. 2022).  Thus, even in situations where a contract is not provided during a transaction, a forum selection clause will be enforced where a party "ha[s] the opportunity to obtain the Terms and Conditions … [and] become meaningfully informed of the forum-selection clause."  *Koswire, Inc. v. Alpha Stainless, Ltd.*, 2018 WL 8368847, at *9 (N.D. Ga. 2018).

Red Dragon obviously had the opportunity to become acquainted with the Operating Agreement.  Indeed, Dr. Gupta first signed the MIPC and acknowledged the Operating Agreement's terms and conditions in *2017*.  He knew that Red Dragon was a member of the

---

[2] Red Dragon broadly relies on cases where one party was a retail consumer at a significant bargaining disadvantage with a business entity.  That is not the case here.  Red Dragon is a sophisticated investor, and the deference afforded to a "consumer" should not be afforded here.  *See Koswire, Inc. v. Alpha Stainless, Ltd.,* 2018 WL 8368847, at *9 (N.D. Ga. 2018).

Company and that its relationship with the Company was governed by its terms. He knew that he could obtain a copy free of charge. Red Dragon had every opportunity to become acquainted with the Operating Agreement. In any event, it appears that Red Dragon *was* acquainted with the Operating Agreement, as evidence by its multiple lawsuits based on it.

### C. Red Dragon Is Equitably Estopped from Disclaiming the Forum Selection Clause.

As outlined above, Red Dragon has maintained suits based on the Operating Agreement in multiple forums. It cannot now attempt to disclaim the portions of the Operating Agreement it does not like. Indeed, "[a]s an equitable matter … plaintiffs cannot simultaneously claim benefits under [an] agreement, but yet disavow the applicability of the forum selection clause contained therein." *Arthrex, Inc. v. Orthogen Aktiengesellschaft*, 250 F. App'x 293, 294 (11th Cir. 2007). Rather, such a circumstance gives rise to equitable estoppel, preventing Red Dragon from avoiding the Forum Selection Clause. *Id*. This basic tenet of equitable conduct should be applied here.

### D. The Styling of Defendants' Motion Does Not Affect the Outcome.

Red Dragon does correctly observe that Defendants' Motion incorrectly referenced Rule 12(b)(3). However, the Motion was correctly styled as a "Motion to Dismiss" and invoked the appropriate analysis under § 1404(a). Essentially, when a forum selection clause mandates that an action be brought in a federal forum, a Motion to Transfer under § 1404(a) is the appropriate mechanism to enforce a forum selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 134 S. Ct. 568, 580 (2013). However, when a forum selection clause does not specify a federal forum, the party enforcing the forum selection clause appropriately does so by way of a motion to dismiss under the doctrine of *forum non conveniens*. *Id*. at fn. 8. Thus, when a forum selection clause does not "compel the choice" of a "federal forum," a Complaint is appropriately dismissed by a Motion to Dismiss for *forum non conveniens*. *Lightning Partners,*

*Inc. v. SPS Com., Inc.*, 2022 WL 485228, at *2 (M.D. Fla. 2022). Here, the Forum Selection Clause mandates that suit must be brought in the "State of Delaware or any federal court of the District of Delaware." That is, the Forum Selection Clause does not mandate a federal forum, and dismissal is therefore appropriate.

Analyzed under the § 1404 framework, which Defendants sought to apply in their Motion, *see* Opening Brief at p.6, a "forum-selection clause will be invalidated only when: 1) its formation was induced by fraud or overreaching; 2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; 3) the chosen law would deprive the plaintiff of a remedy; or 4) enforcement of the clause would contravene public policy." *Moisttech Corp. v. Sensor Tech. Sys.*, 2015 U.S. Dist. LEXIS 83392, at *11-12 (M.D. Fla. 2015). Red Dragon does not offer a reason why this matter should not proceed in Delaware and does not identify any "extraordinary circumstances" that would merit avoiding the enforcement of the forum selection clause, because there are none. Red Dragon has already demonstrated that Delaware is a perfectly acceptable forum and cannot now resist proceeding in Delaware.

### III. RED DRAGON HAS FAILED TO MAKE A *PRIMA FACIE* SHOWING OF SECURITIES FRAUD AGAINST WILSON, ROSEN, AND ST. JOHN

#### A. Red Dragon has Not Identified Any "Incomplete Statement" Made to Red Dragon.

Red Dragon begins its Opposition on this issue by noting "the Eleventh Circuit is clear that an incomplete statement may be fraudulent." Defendants agree. But in order to state a claim for common law or statutory fraud, Red Dragon must identify an "omission[] of material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *In re Health Ins. Innovations Sec. Litig.*, 2019 WL 3940842, at *8 (M.D. Fla. 2019) (citing *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1275 (11th

Cir. 2016)).  That is, Red Dragon must identify a statement that Rosen, Wilson, or St. John made that was misleading and the omission that made it misleading.

Red Dragon has not done so.  Acknowledging that Red Dragon takes offense with the non-disclosure of the Wilson Loan, Red Dragon has not identified any statement these Defendants made that were misleading because they did not describe the Wilson Loan.  To be clear, the statements attributable to these actors in the Complaint are that Rosen and Wilson encouraged non-party Malkani to invest in the Company and that St. John altered a waterfall in a wholly undescribed way.  These communications are not described in any meaningful detail, much less to detail how the statements were misleading because they did not include the Wilson Loan.

Not only are these allegations insufficient to rise to the level of fraud from their alleged contents, Red Dragon does nothing to address the fact that *none of these communications were made to Red Dragon.*  Indeed, Red Dragon cites no caselaw for the authority that communications made to non-party Malkani would be imputed to Red Dragon simply because the two are friends.  Thus, even if Red Dragon had sufficiently alleged a fraudulent statement made by these actors to Malkani, that would not be sufficient to state a claim as to Red Dragon.

In its Opposition, Red Dragon now attributes to Wilson a balance sheet.  The basis for this – not found in the Complaint – is that Wilson was "responsible" for this balance sheet, which was distributed to shareholders.  This is moving the goal posts.  The Complaint actually alleges that it was *Cunningham* who distributed this Balance Sheet. Now that the Complaint has been challenged, Red Dragon claims that Wilson had some undescribed role in the preparation of the Balance Sheet.  Even if this claim were pled, it would not sufficiently demonstrate how the Balance Sheet was misleading, or what role Wilson had in making it misleading.

### B.     Red Dragon Cannot Establish that Rosen, Wilson, or St. John Controlled the Conduct at Issue.

Red Dragon's claim that Rosen, Wilson, and St. John are subject to control person liability, at its core, rests on these Defendants' status as managers of TruthMD and sweeping allegations that do not specifically describe how they controlled Cunningham's interactions with Red Dragon. That is not enough to fix their liability.

Indeed, "[a] director is not automatically liable as a controlling person under § 20(a)." *HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB*, 2001 WL 36186526, at *19 (S.D. Fla. 2001). Rather, where "Plaintiff simply points to [a director's] general level of control but provides no specific indication that [the director] supervised or had any responsibility for the preparation of the financial statements[,] plaintiff has not shown that [the director] had the requisite actual authority over the preparation of the financial statements necessary to find him a control person." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 (9th Cir. 2000). Here, Red Dragon has failed to make the necessary showing on two fronts.

*First,* as outlined in the Opening Brief, this is a case that is squarely about Cunningham's interactions with Red Dragon. Rosen and Wilson are not alleged to have interacted with Red Dragon at all, and St. John is only alleged to have edited and discussed a spreadsheet. Plaintiff does not explain how these Defendants could have or would be expected to control Cunningham's negotiations with one investor. Instead, they now claim that there is some undescribed policy "regarding reporting and disseminating information." Initially, these allegations are not contained in the Complaint, and should not be considered now. Even if they were, Red Dragon's new allegations do not plausibly explain what Rosen, Wilson, or St. John did or did not do to cause the conduct alleged in the Complaint. These are the precise sort of threadbare recitals of causes of action that do not pass muster under Rule 12(b)(6).

*Second*, peeling back Plaintiff's Opposition, it is evident that there is no specific policy of which Red Dragon is complaining. *HCM High Yield Opportunity* is instructive here. There, the defendants had specific "knowledge about information in and statements made in" the document that allegedly gave rise to liability under the Securities Act. *Id*. at *19. Thus, it was only their "activities *as a director*" that made them liable as control persons. *Id*. That is not the case here. Rather, the Complaint relies only on broad generalizations of these outside directors' role in the Company, and does not identify any manner in which they participated in the allegedly liability-causing acts. The claims against Rosen, Wilson, and St. John should be dismissed as a result.

IV. <u>CONCLUSION</u>[3]

For the foregoing reasons, Defendants request that their Motions to Dismiss be granted.

*/s/ Robin Taylor Symons*
Robin Taylor Symons, Esq.
Florida Bar No. 356832
rsymons@grsm.com
dsalinas@grsm.com
GORDON & REES
SCULLY MANSUKHANI
100 SE Second Street, Suite 3900
Miami, Florida 33131
Telephone: 305-428-5330
Facsimile: 877-644-6209

Michael C. Heyden, Esq. – *Pro Hac Vice*
824 N. Market Street, Suite 220
Wilmington, DE 19801
Telephone: 302-992-8955
Facsimile: 302-724-6444
mheyden@grsm.com
rxmartin@grsm.com
***Counsel for Defendant***

---

[3] Defendants rely on their Opening Brief as outlining the reasons why Red Dragon's state and common law claims should be dismissed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF on the 2nd day of June 2023, which will serve a copy of this document by electronic notice to the attorneys identified on the following Service List.

                                           *s/ Robin Taylor Symons*
                                           Robin Taylor Symons, Esq.

**Service List**

Marcos Daniel Jimenez, Esq.
**LEON COSGROVE JIMENEZ, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
mjimenez@leoncosgrove.com
lburns@leoncosgrove.com
*Counsel for Plaintiff*

1298824/77422962v.1

**GORDON REES SCULLY MANSUKHANI**
Miami Tower ▪ 100 S.E. 2nd Street ▪ Suite 3900 ▪ Miami, FL 33131 ▪ Telephone: 305-428-5300