# EXHIBIT 1

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

**THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT** (this "**Agreement**") is made and entered into and is effective as of February 14, 2017 (the "**Effective Date**"), by and between Gemma Turi, an individual ("**Seller**"), and Red Dragon Partners, LLC a Florida limited liability company ("**Buyer**").

## RECITALS

A.     Seller is a founding member ("**Member**") of TruthMD, LLC, a Delaware limited liability company, doing business as "MedFax" (the "**Company**").

B.     Buyer has expressed an interest in purchasing a Membership Interest ("**Membership Interest**") in the Company. The Company has recently completed an equity raise and has no immediate plans to offer or sell additional Membership Interests.

C.     Seller has agreed to make one (1) Series B Unit of Membership Interest in the Company (the "**Unit**") available for purchase by Buyer upon the terms and conditions and subject to the limitations set forth herein.

**NOW, THEREFORE**, in consideration of the mutual representations, warranties, covenants, and agreements of the parties hereinafter set forth, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF THE UNIT

**1.1.     Purchase and Sale.** Upon the terms and subject to the conditions of this Agreement, Buyer agrees to purchase, accept, and acquire from Seller, and Seller agrees to sell, transfer, assign, convey, and deliver to Buyer, at the Closing (as hereinafter defined), the Unit for the Purchase Price.

**1.2.     Purchase Price.** In consideration of the sale of the Unit, Buyer shall pay to Seller in cash the sum of Two Hundred Thousand Dollars ($200,000) (the "**Purchase Price**"). The Purchase Price shall be payable to Seller in cash at the Closing.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Buyer as follows:

**2.1.     Power and Authority.** Seller has the power and authority to execute, deliver, and perform this Agreement and the other agreements and instruments to be executed and delivered by Seller in connection with the transactions contemplated hereby and thereby, if any. This Agreement has been duly executed and delivered by Seller and Seller will, on or prior to the Closing Date, duly execute and deliver the documents referred to herein to which it is to be a

party. Assuming the due authorization, execution and delivery of this Agreement and the documents referred to herein by the parties hereto and thereto other than Seller, this Agreement constitutes, and when executed and delivered each of such documents referred to herein will constitute the legal, valid, and binding obligations of Seller, enforceable against Seller in accordance with their terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and general equitable principles. No consents, approvals or authorizations are required other than consents, approvals or authorizations that have been obtained.

**2.2. Title to the Common Unit.** Seller is the owner, beneficially and of record, of the Common Unit and has and will transfer to Buyer at the Closing, good and indefeasible title to the Unit, free and clear of all title defects, liens, restrictions, pledges, hypothecations, claims, charges, security interests, or other encumbrances of any nature whatsoever.

**2.3. Broker's or Finder's Fees.** Seller has not authorized any person to act as broker or finder or in any other similar capacity in connection with the transactions contemplated by this Agreement and no broker, finder or financial advisor is entitled to any broker's, finder's, or financial advisor's fee or other commission in respect thereof based in any way on any agreement, arrangement or understanding with Seller.

**ARTICLE III**
**REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer hereby represents and warrants to Seller as follows:

**3.1. Power and Authority.** Buyer has the power and authority to execute, deliver, and perform this Agreement and the other agreements and instruments to be executed and delivered by him in connection with the transactions contemplated hereby and thereby, and Buyer has taken all necessary action to authorize the execution and delivery of this Agreement and such other agreements and instruments and the consummation of the transactions contemplated hereby and thereby. This Agreement has been duly executed and delivered by Buyer and Buyer will, on or prior to the Closing Date, duly execute and deliver the documents referred to herein to which he is to be a party. Assuming the due authorization, execution and delivery of this Agreement and the documents referred to herein by the parties hereto and thereto other than Buyer, this Agreement constitutes, and when executed and delivered each of such documents referred to herein will constitute the legal, valid, and binding obligation of Buyer, enforceable against Buyer in accordance with their terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and general equitable principles.

**3.2. Broker's or Finder's Fees.** Buyer has not authorized any person to act as broker, finder, or in any other similar capacity in connection with the transactions contemplated by this Agreement and no broker, finder or financial advisor is entitled to any broker's, finder's, or financial advisor's fee or other commission in respect thereof based in any way on any agreement, arrangement or understanding with Buyer.

**3.3.     Investment Representations.**  Buyer understands that neither this Agreement, nor the Unit has been registered under the 1933 Act.  Buyer also understands that the Unit is being offered and sold pursuant to an exemption from registration contained in the 1933 Act based in part upon the Buyers' respective representations contained in this Agreement.  Buyer hereby further represents and warrants as follows:

(a) *Buyer Can Bear Economic Risk.*  Buyer has substantial experience in evaluating and investing in private placement transactions of securities in companies similar to the Company so that Buyer is capable of evaluating the merits and risks of his investment in the Company and has the capacity to protect its own interests.  Buyer understands the risks of an investment in the Company and can afford to bear such risks, including without limitation, the risk of losing such Buyer's entire investment.  Buyer is capable of bearing the economic risk of this investment indefinitely unless the Unit is registered pursuant to the Securities Act and applicable state securities laws, or an exemption from registration is available.  Buyer acknowledges that no market for the Unit currently exists and none is expected to develop in the future and, as a result, it may be difficult, if not impossible, to liquidate such Buyer's investment at a time when such Buyer finds it desirable to do so.

(b) *Acquisition for Own Account.*  Buyer is acquiring the Unit for such Buyer's own account for investment only, and not with a view towards their distribution.

(c) *Buyer Can Protect His Interest.*  Buyer represents that by reason of his business or financial experience, such Buyer has the capacity to protect its own interests in connection with the transactions contemplated in this Agreement and the Unit.

(d) *Accredited Investor.*  Buyer represents that he is an "accredited investor" within the meaning of Regulation D under the Securities Act.

(e) *Company Information.*  Buyer has received and read the Limited Liability Company Agreement of the Company, and has had an opportunity to discuss the Company's business, management and financial affairs with officers and the Managers of the Company and has had the opportunity to review the Company's operations.

(f) *Rule 144.*  Buyer represents that he is familiar with the nature of the restrictions imposed by the Securities Act and the rules and regulations thereunder on the transfer of securities.  Buyer acknowledges and agrees that the Unit may not be sold, assigned or transferred unless it is subsequently registered under the 1933 Act and applicable state securities laws, or an exemption from such registration is available.  Buyer has been advised or is aware of the provisions of Rule 144 promulgated under the 1933 Act as in effect from time to time, which permits limited re-sales of securities purchased in a private placement subject to the satisfaction of certain conditions, including, among other things:  the availability of certain current public information about the Company, the resale occurring following the required holding period under Rule 144 and the number of securities being sold during any three-month period not exceeding specified limitations.

3

(g) *Transfer Restrictions; Legends*. Buyer acknowledges and agrees that the Unit is subject to restrictions on transfer. It is understood that the Certificate for the Unit when issued shall bear a legend substantially in the following form (in addition to any legend required under applicable state securities laws):

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR QUALIFIED UNDER ANY STATE SECURITIES LAWS, AS APPLICABLE (THE "LAWS"). THESE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT ONLY AND NOT WITH A VIEW TO DISTRIBUTION OR RESALE, AND MAY NOT BE TRANSFERRED UNLESS THEY HAVE BEEN REGISTERED UNDER THE ACT AND QUALIFIED UNDER THE LAWS OR AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY HAS BEEN RECEIVED THAT REGISTRATION UNDER THE ACT AND QUALIFICATION UNDER THE LAWS ARE NOT REQUIRED.

TRANSFER OF THESE SECURITIES IS SUBJECT TO THE RESTRICTIONS SET FORTH IN THE LIMITED LIABILITY COMPANY AGREEMENT FOR THE COMPANY, AS AMENDED.    THE COMPANY WILL FURNISH WITHOUT CHARGE TO EACH UNIT HOLDER WHO SO REQUESTS, A COPY OF THE LIMITED LIABILITY COMPANY AGREEMENT, WHICH SETS FORTH THE POWERS, DESIGNATIONS, PREFERENCES AND RELATIVE RIGHTS OF UNIT HOLDERS AND THE QUALIFICATIONS, LIMITATIONS OR RESTRICTIONS OF SUCH RIGHTS.

## ARTICLE IV
## CLOSING

**4.1.    The Closing**. The closing of the purchase and sale of the Unit (the "**Closing**") shall take place at the offices of the Company at such other place and time as the parties shall agree (the "**Closing Date**").

**4.2.    Seller Deliveries**. At Closing, Seller shall deliver, or cause to be delivered, the following documents to Buyer, in each case duly executed or otherwise in proper form:

(a) *Certificate for the Unit*. If certificated, a certificate representing the Unit, together with a duly executed assignment.

(b) *Other Documents*. All other documents, instruments or writings required to be delivered to Buyer at or prior to Closing pursuant to this Agreement, if any.

**4.3.    Buyer Deliveries**. At Closing, Buyer shall deliver the following documents to the Seller, in each case duly executed or otherwise in proper form:

(a) *Cash Closing Payment*. A certified or bank cashier's check or wire transfer, in the amount required by Section 1.2 hereof.

261878.2                                                                                                    2959 000

(b) *Other Documents.* All other documents, instruments or writings required to be delivered to Seller at or prior to Closing pursuant to this Agreement, if any.

**4.4.** **Further Assurances.** At and after the Closing, without further consideration, each of the parties hereto shall take all such other action and shall procure or execute, acknowledge, and deliver all such further certificates, conveyance instruments, assumption instruments, consents, and other documents as the other party or its counsel may reasonably request: (i) to vest in Buyer, and perfect and protect Buyer's right, title, and interest in, and enjoyment of, the Unit; or (ii) to ensure more effectively the compliance of such party with its agreements and covenants under this Agreement and the other documents referred to herein.

## ARTICLE V
## MISCELLANEOUS

**5.1.** **Limited Liability Company Agreement.** Upon the execution of this Agreement, Buyer shall, automatically and with no further action of the Company or Buyer, be (i) entitled to receive Distributions and allocations of Net Income and Net Loss from the Company attributable to the Unit acquired from Seller and shall be treated as the absolute owner thereof in all respect and (ii) subject to all of the terms, conditions and restrictions of the Limited Liability Company Agreement as if Buyer had executed such document directly. Buyer agrees to execute such documents, acknowledgments, certificates, or other documents (including, without limitation, the Limited Liability Company Agreement and any agreements thereto) as the Company may reasonably request in order to evidence Buyer's membership interest in the Company.

**5.2.** **Entire Agreement; Amendment.** This Agreement, the documents referred to herein, and the other certificates, agreements, and other instruments to be executed and delivered by the parties in connection with the transactions contemplated hereby, constitute all of the promises, agreements, conditions, understandings, warranties and representations between the parties hereto with respect to the transactions contemplated hereby and thereby, and supersede all prior agreements, arrangements and understandings between the parties hereto, whether written, oral or otherwise. There are no promises, agreements, conditions, understandings, warranties or representations, oral or written, express or implied, between the parties hereto concerning the subject matter hereof or thereof except as set forth herein and therein. No amendment, modification, or alteration of the terms or provisions of this Agreement shall be binding unless the same shall be in writing and duly executed by the parties hereto.

**5.3.** **Parties Bound by Agreement; Successors and Assigns.** The terms, conditions, and obligations of this Agreement shall inure to the benefit of and be binding upon the parties hereto and the respective successors and permitted assigns thereof. Without the prior written consent of the other party, neither party hereto may assign or transfer all or any portion of its rights, duties and obligations hereunder and any attempt to do so without such consent shall be null and void; provided, however, that no assignment by either of the parties hereto of any of its rights, membership interests or obligations hereunder shall relieve such party of its obligations under this Agreement.

**5.4.** **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original and all of which shall constitute the same Agreement.

**5.5.** **Headings.** The headings of the Sections and paragraphs of this Agreement are inserted for convenience only and shall not be deemed to constitute part of this Agreement or to affect the construction hereof.

**5.6.** **Waiver.** No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom that waiver is sought to be enforced. No failure or delay on the part of either of the parties hereto in exercising any right, power or privilege hereunder, and no course of dealing between the parties hereto, shall operate as a waiver of any right, power or privilege hereunder.

**5.7.** **Expenses.** Neither Seller nor Buyer shall pay any of the other's costs and expenses incurred by him or it or on his or its behalf in connection with this Agreement and the transactions contemplated hereby, including fees and expenses of its own financial consultants, accountants, and counsel. It is understood that each party hereto is solely responsible for his or its own costs and expenses and to the extent desired, has consulted with its own legal counsel.

**5.8.** **Notices.** Any notice, request, instruction, or other communication to be given hereunder by any party hereto to any other party hereto shall be in writing and delivered personally or sent by facsimile, overnight commercial courier or registered or certified mail, postage prepaid:

| | |
|---|---|
| If to Seller to: | Gemma Turi |
| | ██████████████ |
| | |
| If to Buyer to: | Red Dragon Partners, LLC ████████████ |
| | Attn: Shailesh Gupta |
| | ████████████ |

or at such other address for a party as shall be specified by like notice. Notices shall be deemed given upon the earliest of: (i) receipt; (ii) confirmed facsimile transmission; (iii) one (1) day after delivery to an overnight commercial courier; or (iv) three (3) days after deposit in U.S. mail.

**5.9.** **Governing Law.** This Agreement shall be construed in accordance with and governed by the laws of the State of California.

**5.10.** **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement, and

the parties hereto agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken and ineffective as if such stricken part or parts had never been included herein.

**5.11.   Remedies.**  All rights and remedies under this Agreement are cumulative and shall be in addition to every other remedy given hereunder, or now or hereafter existing at law or in equity including, without limitation, injunctive relief and specific performance and not one of them shall be exclusive of any other.

**5.12.   Attorneys' Fees.**  In the event of any proceeding arising out of or related to this Agreement, the prevailing party shall be entitled to recover from the losing party all of its costs and expenses incurred in connection with such proceeding, including court costs and reasonable attorneys' fees, whether or not such proceeding is prosecuted to judgment.

**5.13.   Interpretation.**  In this Agreement, unless a clear contrary intention appears:

(a) The words "hereof", "herein" and "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement;

(b) Reference to any gender includes each other gender and the neuter;

(c) All terms defined in the singular shall have the same meanings in the plural and vice versa;

(d) The word "person" means any individual, firm, corporation, trust, association, company, limited liability company, joint stock company, partnership, joint venture, Governmental Authority or other entity or enterprise;

(e) Reference to any person includes such person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (e) is intended to authorize any assignment not otherwise permitted by this Agreement;

(f) Reference to a person in a particular capacity or capacities excludes such person in any other capacity;

(g) Reference to any contract or agreement means such contract or agreement as amended, supplemented or modified from time to time in accordance with the terms thereof;

(h) All references to Articles, Sections, and Exhibits shall be deemed to be references to the Articles and Sections of this Agreement and the Exhibits attached hereto which are made a part hereof and incorporated herein by reference;

(i) The word "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term;

7

(j) With respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding";

(k) Reference to any Law means such Law as amended, modified, codified, reenacted, supplemented or superseded in whole or in part, and in effect from time to time;

(l) The word "knowledge", when used in any representation, covenant or warranty of either of the parties hereto contained herein, means the actual knowledge of any officer, director or member of senior management of, or other person performing similar functions for, such party;

(m) Where any provision of this Agreement refers to action to be taken by any person, or which such person is prohibited from taking, such provision shall be applicable whether such action is taken directly or indirectly by such person; and

(n) No provision of this Agreement shall be interpreted or construed against either of the parties hereto solely because that party or its legal representative drafted such provision.

IN WITNESS WHEREOF, each of the parties hereto has duly executed this Membership Interest Purchase Agreement as of the date first above written.

**"BUYER"**

Red Dragon Partners **LLC**

By: _____

Shailesh Gupta, Managing Member

8

261878.2                                                                                                   2959.000

"SELLER"

Gemma Turi

REVIEWED AND APPROVED:

"COMPANY"

**TruthMD, LLC**, a Delaware limited
liability company

By: _____
        Gemma Cunningham, Chief Executive Officer

9

# EXHIBIT 2

## ASSIGNMENT OF MEMBERSHIP INTEREST

### August 1, 2020

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Nicholas Mataragas, M.D., an individual (the "**Assignor**"), hereby assigns and transfers to Red Dragon Partners, LLC (the "**Assignee**"), all right, title and interest in and to the membership interest owned by Assignor (the "**Membership Interest**") in one (1) Series F Preferred Unit of Membership Interest in TruthMD, LLC, a Delaware limited liability company ("**TruthMD**") standing in Assignor's name on the books of TruthMD, but otherwise uncertificated, and does hereby irrevocably constitute and appoint the managers of TruthMD as Assignor's attorney in fact to transfer the Membership Interest on the books and records of TruthMD with full power of substitution in the premises.

The validity and construction of this Assignment of Membership Interest (this "**Assignment**") shall be governed by the internal laws of the State of Delaware, without regard to the conflicts of law principles of such State.

The exchange of copies of this Assignment by facsimile, PDF or other electronic transmission shall constitute effective execution and delivery of this Assignment by the undersigned and may be used in lieu of the original signature for all purposes.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Assignment as of the date first written above.

"**ASSIGNOR**"

Nicholas Mataragas, M.D.

338273.1                                                                                                    2959.000

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Amended and Restated Unsecured Promissory Note as of the date first above written.

"MAKER"

TRUTHMD, LLC,
a Delaware limited liability company

By: _____

Name: _____

Title: _____


ACCEPTED AND AGREED:

_____

Nicholas R. Mataragas, M.D.


**Signature Page Unsecured Promissory Note**

338066.1                                                                      2959.000

# EXHIBIT 3

# SUBSCRIPTION BOOKLET

# TruthMD, LLC

317043.1

2959.000

# SUBSCRIPTION INSTRUCTIONS

EACH POTENTIAL INVESTOR WHO WISHES TO SUBSCRIBE FOR UNITS MUST COMPLETE, EXECUTE AND RETURN TO THE COMPANY THE FOLLOWING DOCUMENTS CONTAINED IN THIS SUBSCRIPTION BOOKLET (AS APPLICABLE):

    (1)    A Subscription Agreement;

    (2)    A Member Signature Page;

    (3)    A Certificate of Nonforeign Status;

    (4)    Acknowledgment of Receipt – Financial and Other Company Information; and

    (5)    Rule 506 "Bad Actor" Disqualification Questionnaire.

## ALSO, IF APPLICABLE, PLEASE DELIVER THE FOLLOWING:

IF THE POTENTIAL INVESTOR IS A TRUST, INCLUDE A COPY OF THE TRUST AGREEMENT.

IF THE POTENTIAL INVESTOR IS A PARTNERSHIP, INCLUDE A COPY OF THE SIGNED PARTNERSHIP AGREEMENT, AND A COMPLETED SUBSCRIPTION AGREEMENT FOR **EACH** PARTNER.

IF THE POTENTIAL INVESTOR IS A CORPORATION, INCLUDE A COPY OF THE BOARD RESOLUTION DESIGNATING THE CORPORATE OFFICER AUTHORIZED TO SIGN ON BEHALF OF THE CORPORATION AND AUTHORIZING THE INVESTMENT AND THE CORPORATION'S MOST RECENT FINANCIAL STATEMENTS.

IF POTENTIAL INVESTOR IS A LIMITED LIABILITY COMPANY, INCLUDE A COPY OF THE SIGNED OPERATING AGREEMENT AND THE ARTICLES OF ORGANIZATION OR CERTIFICATE OF FORMATION, AS FILED, AND A COMPLETED SUBSCRIPTION AGREEMENT FOR **EACH** MEMBER AND **EACH** MANAGER.

# SUBSCRIPTION AGREEMENT

TO:   **TruthMD, LLC,**
a Delaware limited liability company
32932 Pacific Coast Highway, Suite 14-405
Dana Point, CA  92629

The undersigned (the "**Purchaser**"), by completing and executing this Subscription Agreement and the Member Signature Page and Power of Attorney, hereby tenders this subscription and applies for the purchase of the number of Units (the "**Units**") of **TruthMD, LLC**, a Delaware limited liability company (the "**Company**"), set forth below the Purchaser's signature hereto, and encloses a cashier's check payable to "TruthMD, LLC" (or has previously sent a bank wire) representing payment of the Capital Contribution indicated below.

The Purchaser (or, if the Purchaser is signing in a fiduciary capacity, the person or persons for whom the fiduciary is signing) hereby represents and warrants to the Company that:

(a)    The Purchaser is an "accredited investor" within the meaning of Regulation D promulgated under the Securities Act of 1933, as amended (the "**Securities Act**").  The specific category or categories of "accredited investor" applicable to the Purchaser are as follows:

A. AND B. ARE APPLICABLE TO INDIVIDUALS (Please **INITIAL** applicable blanks):

A.    The Purchaser is a natural person and has a net worth, either alone or with the Purchaser's spouse, of more than $1,000,000, *excluding* the value of Purchaser's primary residence (calculated by subtracting from the estimated fair market value of the property the amount of debt secured by the property, up to the estimated fair market value of the property) and *including* the value of home furnishings and automobiles.

B.    The Purchaser is a natural person and had income in excess of $200,000 ($300,000 including income of spouse) during each of the previous two years and expects to have income in excess of such amounts during the current year.

C. THROUGH F. ARE APPLICABLE TO NON-INDIVIDUALS (Please **INITIAL** applicable blanks):

C.    _____    The Purchaser is a trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Units, and the purchase is directed by a financially sophisticated person meeting the criteria described in Subsection (f) below.

D.    _____    The Purchaser is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 that either (i) has its investment decisions made by a plan fiduciary, as defined by Section 3(21) of such Act, which is a bank, savings and loan association, insurance company or a registered investment adviser, or (ii) has total assets in excess of $5,000,000 or, if a self-directed plan, the investment decisions are made solely by persons who are accredited investors as described herein.

E.    _____    The Purchaser is an entity (*excluding* **a trust UNLESS it is a revocable grantor trust**) in which all of the equity owners are accredited investors within categories A and B above.

1

F.    _____    The Purchaser is a corporation, or a partnership, not formed for the specific purpose of acquiring the Units, with total assets in excess of $5,000,000.

(b)    The Purchaser understands that the Company has not registered the Units under the Securities Act, or qualified the Units under the applicable securities laws of any state, in reliance on exemptions from registration and qualification, and the Purchaser understands that such exemptions depend in large part on the Purchaser's investment intent at the time the Purchaser acquires the Units;

(c)    The Units subscribed for herein will be acquired for the Purchaser's own account, for investment and not for resale or distribution to any person, corporation, or other entity, and the Purchaser has no intention of distributing or reselling the Units;

(d)    The Purchaser acknowledges that any disposition of the Units is subject to restrictions imposed by federal and state law and that the certificates representing the Units will bear a restrictive legend. The Purchaser also recognizes that the Units cannot be disposed of by the Purchaser, absent registration and qualification, or an available exemption from registration and qualification, and that no undertaking has been made with regard to registering or qualifying the Units in the future. The Purchaser understands that the availability of an exemption in the future will depend in part on circumstances outside the Purchaser's control and that the Purchaser may be required to hold the Units for a substantial period. The Purchaser recognizes that no public market exists with respect to the Units and no representation has been made to the Purchaser that such a public market will exist at a future date. The Purchaser understands that no state securities administrator or commissioner has made any finding or determination relating to the fairness for investment of the Units and that no such administrator or commissioner has or will recommend or endorse the Units;

(e)    The Purchaser has not seen or received any advertisement or general solicitation with respect to the sale of the Units;

(f)    The Purchaser believes, by reason of the Purchaser's business or financial experience, that the Purchaser is capable of evaluating the merits and risks of this investment and of protecting the Purchaser's interest in connection with this investment;

(g)    The Purchaser acknowledges that prior to acquiring the Units, the Purchaser has been provided with financial and other written information about the Company, its business activities and the terms and conditions of the offering. The Purchaser has been given the opportunity by the Company to obtain such information and ask such questions concerning the Company, the Units and the Purchaser's investment as the Purchaser felt necessary, and to the extent the Purchaser took such opportunity, the Purchaser received satisfactory information and answers. If the Purchaser requested any additional information which the Company possessed or could acquire without unreasonable effort or expense which was necessary to verify the accuracy of the financial and other written information furnished to the Purchaser by the Company, such additional information was provided to the Purchaser and was satisfactory. In reaching the conclusion to acquire the Units, the Purchaser has carefully evaluated the Purchaser's financial resources and investment position and the risks associated with this investment, and the Purchaser acknowledges that the Purchaser is able to bear the economic risks of this investment. The Purchaser further acknowledges that the Purchaser's financial condition is such that the Purchaser is not under any present necessity or constraint to dispose of the Units to satisfy any existing or contemplated debt or undertaking;

(h)    The Purchaser hereby accepts full and sole responsibility for all state and federal tax consequences which may result from the Purchaser's acquisition of the Units;

(i)    The Purchaser, if subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), has taken into consideration the diversification requirements of ERISA prior to making an investment in the Units;

(j)    The Purchaser, if executing this Subscription Agreement and the Member Signature Page and Power of Attorney in a representative or fiduciary capacity, has full power and authority to execute and deliver this Subscription Agreement, the Amended and Restated Limited Liability Company Agreement (the "**Limited Liability Company Agreement**") and the Member Signature Page and Power of Attorney on behalf of the subscribing individual, partnership,

2

trust, estate, corporation, or other entity for whom the Purchaser is executing such documents, and such individual, partnership, trust, estate, corporation, or other entity has full right and power to perform pursuant to such documents and to become a member in the Company pursuant to the Limited Liability Company Agreement;

(k)     The Purchaser has thoroughly reviewed all documents, business plans and/or disclosure information provided to Purchaser, and understands the contents of such documents. The Purchaser is familiar with the Company's business objectives and financial arrangements in connection therewith and believes the Units that the Purchaser is purchasing are the kind of securities that the Purchaser wishes to hold for investment and that the nature and purchase price of the Units are consistent with the Purchaser's investment program. No representations or warranties have been made to the Purchaser regarding this investment contrary to those contained in the Memorandum and attached documents, and the Purchaser agrees to inform the Company if the Purchaser learns that any statements made to the Purchaser in connection with the Purchaser's investment in the Company are untrue. The information set forth herein is true and correct;

(l)     The Purchaser acknowledges and agrees that the Purchaser is not entitled to cancel, terminate or revoke this Subscription Agreement or any of the Purchaser's agreements hereunder and that this Subscription Agreement and any other agreements made hereby shall survive Purchaser's death or disability; and

(m)     The Purchaser has such knowledge and experience in financial and business matters and in investments to be capable of evaluating the merits and risks of the investment in the Units.

In addition, the Purchaser:

(1)     Understands that the Units being acquired will be governed by the Limited Liability Company Agreement;

(2)     Understands that the Company shall have the right to accept or reject this subscription in whole or in part in its sole and absolute discretion;

(3)     Understands that no public market for the Units exists, or is likely to develop, and that it may not be possible to liquidate this investment readily, if at all, in the case of an emergency or for any other reason;

(4)     Understands that the Units are subject to transfer restrictions as set forth in the Limited Liability Company Agreement;

(5)     Acknowledges that to extent desired the Purchaser has consulted with the Purchaser's financial, business and tax advisers before executing this Subscription Agreement;

(6)     Acknowledges and agrees that a breach by the Purchaser of any of the Purchaser's representations made herein which results in a loss by the Company of the exemptions from registration and qualification requirements under applicable federal and state securities laws will cause the Purchaser to be liable to the Company for all damages and losses caused thereby;

This Subscription Agreement and all rights hereunder, shall be governed by, and interpreted in accordance with, the laws of the State of Delaware.

3

2959.000

IN WITNESS WHEREOF, the Purchaser has duly executed and delivered this Subscription Agreement effective as of the date set forth below.

Date: 9/10/ _____ , 2020

[CORPORATION/TRUST]

"PURCHASER"

RED Dragon Partners

By: _____

Title: President

By: _____

Title: _____



Capital Contribution: $ 750,000

Number of Series F Preferred Units: 3

I hereby confirm that the trust named above is a revocable grantor trust in which each of the grantors is an individually accredited investor as described in Sections (a) A. or B. of this Subscription Agreement.

By: _____

Title: CEO

4

IN WITNESS WHEREOF, the Purchaser has duly executed and delivered this Subscription Agreement effective as of the date set forth below.

Date: _____, 2020

                                            **"PURCHASER"**

[INDIVIDUAL]
                                            _____
                                            (Signature)


                                            _____
                                            (Print Name)


                                            _____
                                            (Signature)


                                            _____
                                            (Print Name)


                                            Address: _____
                                            _____


                                            **EMAIL ADDRESS:** _____


                                            Soc. Sec. #s: _____
                                            _____


**Capital Contribution:**          $ _____

**Number of Series F Preferred Units:**     _____


                                    5                 .

317043.1                                                         2959.000

## ACCEPTANCE OF SUBSCRIPTION

THE FOREGOING SUBSCRIPTION IS HEREBY ACCEPTED FOR _3_ UNITS.

DATED: _9/16_, 2020

TruthMD, LLC

By: _____

Title: _____CEO_____

6

2959.000

## MEMBER SIGNATURE PAGE

**TruthMD, LLC,**
a Delaware limited liability company

The undersigned, desiring to become a Member of **TruthMD, LLC**, a Delaware limited liability company (the "**Company**") hereby agrees to all of the terms and conditions of the Amended and Restated Limited Liability Company Agreement of the Company, dated May 1, 2014 (the "**Limited Liability Company Agreement**"), and agrees to be bound thereby. Any capitalized term contained herein that is not defined herein shall have the meaning set forth in the Limited Liability Company Agreement.

**THIS SUBSCRIPTION IS FOR** _3_ **SERIES F PREFERRED UNITS**

**CAPITAL CONTRIBUTION:** $ _750,000_

Executed on _9/15/2020_, 2020, at _____, _____.

_____
Signature of Subscriber

_____
Signature of Subscriber

Social Security Nos.: ██████████

Driver's License Nos.   ████████████████

_____

Email Address: ███████████████

Home Address: _____

      City: _____   State:___

      Zip: _____

Home Phone: (___)_____

Business Address:_____

      City: _____   State:___

      Zip: _____

Business Phone: (   )_____

1

317043.1

2959.000

REGISTRATION:
**PLEASE PRINT YOUR NAME(S) EXACTLY AS YOUR UNITS ARE TO BE REGISTERED:**

_____

TITLE REGISTRATION PREFERENCE
## CHECK <u>ONE</u>

A. ___ Individual Ownership
B. ___ Joint Tenants with Right of Survivorship (**ALL MUST SIGN**)
C. ___ Trust (Date Trust Established _____.)
D. ___ Partnership
E. ___ Community Property
F. ___ Tenants in Common (**ALL MUST SIGN**)
G. ~~Corporation~~
H. ✓ Limited Liability Company
I. ___ Other _____

2

317043.1

2959.000

# CERTIFICATE OF NONFOREIGN STATUS

### Members Who Are "Individuals"

Section 1446 of the Internal Revenue Code provides that a limited liability company which is taxed as a partnership must pay a withholding tax to the Internal Revenue Service with respect to a member's allocable share of such limited liability company's effectively connected taxable income, if the member is a foreign person. In addition, Section 18666 of the California Revenue and Taxation Code provides that a limited liability company taxed as a partnership may be required to pay a withholding tax to the California Franchise Tax Board in certain instances if a member is a nonresident of California. To inform TruthMD, LLC, a Delaware limited liability company (the "**Company**"), that the provisions of Section 1446 and Section 18666 do not apply, the undersigned hereby certifies the following:

1.    I am not a nonresident alien for purposes of U.S. income taxation and I am not a nonresident of California for the purposes of California income taxation:

2.    My U.S. taxpayer identification number (social security number(s)) is/are: ███████████ _____; and

3.    My home address is ___ ███████████████████████

I hereby agree that if I become a nonresident alien and/or a nonresident of California, I will notify the Company within 60 days of doing so. I understand that this certification may be disclosed to the Internal Revenue Service and/or the California Franchise Tax Board by the Company and that any false statement I have made here could be punished by fine, imprisonment, or both.

I agree to execute a new Certificate of Nonforeign Status from time to time as required by the Company..

Under penalty of perjury, I declare that I have examined this certification to the best of my knowledge and belief it is true, correct, and complete.

Dated: _9/16/2020_____, 2020

Signature

_____SHAILESH GUPTA_____
Print Name

_____
Signature

_____
Print Name

317043.1                                                                2959.000

## CERTIFICATE OF NONFOREIGN STATUS

### Members That Are "Entities"

Section 1446 of the Internal Revenue Code provides that a limited liability company taxed as a partnership must pay a withholding tax to the Internal Revenue Service with respect to a member's allocable share of such limited liability company's effectively connected taxable income, if the member is a foreign person. In addition, Section 18666 of the California Revenue and Taxation Code provides that a limited liability company taxed as a partnership may be required to pay a withholding tax to the California Franchise Tax Board in certain instances if a member is a nonresident of California. To inform **TruthMD, LLC,** a Delaware limited liability company (the "**Company**") that the provisions of Section 1446 and Section 18666 do not apply, the undersigned hereby certifies on behalf of _____ (name of entity) (the "**Member**") the following:

    1.    The Member is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations) and is not a nonresident of California for the purposes of the California Revenue and Taxation Code;

    2.    The Member's U.S. employer identification number is: ███████████████ ; and

    3.    The Member's principal office address is: ███████████████████████

The Member hereby agrees to notify the Company within 60 days of the date the Member becomes a foreign person and/or a nonresident of California and agrees to execute a new Certificate of Nonforeign Status from time to time as required by the Company. The Member understands that this certification may be disclosed to the Internal Revenue Service and/or the California Franchise Tax Board by the Company and that any false statement contained herein could be punished by fine, imprisonment or both.

Under penalty of perjury, I declare that I have examined this certification and to the best of my knowledge and belief, it is true, correct, and complete, and I further declare that I have authority to sign this document on behalf of the Member.

Dated: 9/18/2020 , 2020

    Shailesh Gupta /RCO Draws Partner

(Please print name of Member)

By: _____

Title: _____

(Please print name and title of person signing this Certificate)

## ACKNOWEDGMENT OF RECEIPT
## FINANCIAL AND OTHER COMPANY INFORMATION

**TruthMD, LLC,**
a Delaware limited liability company

The undersigned Purchaser, desiring to become a Member of **TruthMD, LLC**, a Delaware limited liability company (the "**Company**") acknowledges that prior to acquiring the Units, the Purchaser has been provided with financial and other written information about the Company, its business activities and the terms and conditions of the offering. The Purchaser has been given the opportunity by the Company to obtain such information and ask such questions concerning the Company, the Units and the Purchaser's investment as the Purchaser felt necessary, and to the extent the Purchaser took such opportunity, the Purchaser received satisfactory information and answers.

Executed on ___9/16/2020____, 2020, at _____ . _____ .

_____SHAURSH GUPTA / RED DRAGON_____
Printed Name of Purchaser                        PArtners

_____
Signature of Purchaser

317043.1

2959.000

## RULE 506 "BAD ACTOR" DISQUALIFICATION QUESTIONNAIRE

***Instructions***

A separate questionnaire should be completed by each of the following people and entities in connection with any offer or sale of securities that is intended to be exempt from federal registration under SEC Rule 506: (a) the issuer; (b) any predecessor of the issuer; (c) any affiliated issuer; (d) any director, executive officer, other officer participating in the offering; (e) general partner or managing member of the issuer; (f) any beneficial owner of 20% or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power ; (g) any promoter connected with the issuer in any capacity at the time of such sale; (h) for an issuer that is a pooled investment fund, any investment manager (an "***Investment Manager***"); (i) any person that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers in connection with such sale of securities (a "***Solicitor***"); (j) any general partner or managing member of any such Investment Manager or Solicitor; or (k) any director, executive officer or other officer that has participated in any offering of any such Investment Manager or Solicitor or general partner or managing member of such Investment Manager or Solicitor.

Name of person/entity completing form: SHAILESH GUPTA _____ ("*You*")
R&D Aragon Partners

Date: _____ 9/16/2023 _____

1.  Have You been convicted, within ten years before the sale of securities in this offering (or five years, in the case of issuers, their predecessors and affiliated issuers), of any felony or misdemeanor:

    (a)  In connection with the purchase or sale of any security; or    Yes (No)

    (b)  Involving the making of any false filing with the Securities and Exchange Commission (the "*SEC*"); or                           Yes (No)

    (c)  Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities?                            Yes (No)

2.  Are You subject to any order, judgment or decree of any court of competent jurisdiction, entered within five years before the sale of securities in this offering, that, at the time of such sale, restrains or enjoins You from engaging or continuing to engage in any conduct or practice:

    (a)  In connection with the purchase or sale of any security or          Yes (No)

    (b)  Involving the making of any false filing with the SEC; or            Yes (No)

    (c)  Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities?                           Yes (No)

3.  Are You subject to a final order of a state securities commission (or an agency or officer of a state performing like functions); a state authority that supervises or examines banks, savings associations, or credit unions; a state insurance commission (or an agency or officer of a state performing like functions); an appropriate federal banking agency; the U.S. Commodity Futures Trading Commission ; or the National Credit Union Administration that:

    (a)  At the time of the sale of securities in this offering, bars You from:

        (i)  Association with an entity regulated by any such                   Yes (No)

commission, authority, agency, or officer; or

    (ii)   Engaging in the business of securities, insurance or banking; or

Yes / No

    (iii)   Engaging in savings association or credit union activities; or

Yes / No

   (b)   Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct entered within ten years before the sale of securities in this offering?

Yes / No

4.   Are You subject to an order of the SEC entered pursuant to Section 15(b) or 15B(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78 o (b) or 78 o-4(c)) or Section 203(e) or (f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3(e) or (f)) that, at the time of the sale of securities in this offering:

   (a)   Suspends or revokes Your registration as a broker , dealer, municipal securities dealer or investment adviser; or

Yes / No

   (b)   Places limitations on Your activities, functions or operations; or

Yes / No

   (c)   Bars You from being associated with any entity or from participating in the offering of any penny stock?

Yes / No

5.   Are You subject to any order of the SEC entered within five years before the sale of securities in this offering that, at the time of such sale, orders You to cease and desist from committing or causing a violation or future violation of:

   (a)   Any scienter-based anti-fraud provision of the federal securities laws, including without limitation Section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)), Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and 17 CFR 240, 10b-5, Section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78 o (c)(1 )) and Section 206(1) of the Investment Advisers Act of 1940 ( 15 U.S.C. 80b-6(1)), or any other rule or regulation thereunder; or

Yes / No

   (b)   Section 5 of the Securities Act of 1933 (15 U.S.C. 77e)?

Yes / No

6.   Are You suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade?

Yes / No

7.   Have You filed (as a registrant or issuer), or have You been, or been named as, an underwriter in, any registration statement or Regulation A offering statement filed with the SEC that, within five years before the sale of securities in this offering, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or is, at the time of such sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued?



7

311346.1

3209.000

317043.1

2959.000

8.    Are You subject to a United States Postal Service false representation order entered within five years before the sale of securities in this offering, or are You, at the time of such sale, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations?

Yes / No

9.    If You are the issuer, or any predecessor or affiliate of the issuer, have You ever been subject to any order, judgment, or decree of any court of competent jurisdiction temporarily, preliminary or permanently enjoining You for failure to comply with SEC Rule 503 (Filing of Notice of Sales)?

Yes / No
or
N/A

If You answered "Yes" to any of the questions above, please explain including dates of any convictions, orders, judgments, decrees, suspensions, expulsions, bars or injunctions:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

8

311346.1                                                                 3209.000

317043.1                                                                 2959.000

IN WITNESS WHEREOF, the undersigned hereby confirm that the foregoing information is true and accurate as of the date first set forth above.

*Signature block for individuals:*

_____
Printed Name of Individual


_____
Signature of Individual


*Signature block for entities:*

_____Red Or1yon Partners, LLC____
Printed Name of Entity

By: _____

Name: _____Shailesh Gupta_____

Title: _____President_____

317043.1                                                              2959.000