**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RED DRAGON PARTNERS, LLC,              )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )        Civil Action No. 24-450-JLH-SRF
                                       )
TRUTHMD, LLC, GEMMA                    )
CUNNINGHAM, CHARLES D. ROSEN,          )
GARY L. WILSON, and MORGAN             )
ST. JOHN,                              )
                                       )
        Defendants.                    )

**REPORT AND RECOMMENDATION**

Presently before the court in this securities action for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") is the motion for partial summary judgment filed by defendants TruthMD, LLC ("TruthMD"), Gemma Cunningham, Morgan St. John, Gary L. Wilson, and Dr. Charles D. Rosen (collectively, "Defendants").[1] (D.I. 82) For the following reasons, I recommend that the court GRANT-IN-PART Defendants' motion for partial summary judgment.

I.      **BACKGROUND**

On January 18, 2023, plaintiff Red Dragon Partners, LLC ("Plaintiff") brought this action for securities fraud in the Southern District of Florida against TruthMD and four of its five officers and managers in connection with Plaintiff's purchase of five preferred units of TruthMD in three transactions occurring in 2017, 2019, and 2020. (D.I. 1) TruthMD is a limited lability company founded by Cunningham, Rosen, and nonparty Dr. Sunil Malkani to provide data solutions to managed care organizations, healthcare insurers, and government agencies. (*Id.* at

---

[1] The briefing and filings associated with the pending motion are found at D.I. 83, D.I. 88, and D.I. 90.

¶¶ 8, 15)  Plaintiff, a limited liability company whose sole member is Dr. Shailesh Gupta, is a preferred member of TruthMD due to its purchase of five preferred units of TruthMD under the terms of the Third Amended and Restated Limited Liability Company Agreement ("Operating Agreement").  (*Id.* at ¶¶ 7, 19)

When Plaintiff bought the preferred units, Cunningham, Rosen, Wilson, and St. John were members of TruthMD's board of managers.  (*Id.* at ¶¶ 16-18)  They did not disclose that Wilson, who served as Chairman of the Board, had loaned TruthMD $400,000 on a short-term basis (the "Wilson Loan") in December of 2018.  (*Id.* at ¶¶ 21-22, 29)  If certain conditions did not occur under the terms of the Wilson Loan, Wilson could purchase a forty percent equity stake in TruthMD on favorable terms (the "Nuclear Option").  (*Id.* at ¶¶ 22-23, 28)

Cunningham approached Dr. Gupta in September of 2020 to propose the purchase of additional units by Plaintiff.  (*Id.* at ¶ 34)  On September 11, 2020, St. John and Cunningham sent Dr. Gupta a spreadsheet (the "Waterfall") prepared in connection with a potential acquisition of TruthMD, which had been edited by St. John to reflect three additional units to be purchased by Plaintiff.  (*Id.* at ¶ 35)  The Waterfall did not disclose the existence of the Nuclear Option allowing Wilson to obtain a substantial percentage of TruthMD shares at a nominal price.  (*Id.*)

Dr. Gupta attended a meeting with St. John, Cunningham, and a third party on September 12, 2020 to discuss Plaintiff's interest in purchasing units transferred from another investor to avoid the dilution of existing shares.  (*Id.* at ¶ 36)  Plaintiff agreed to purchase the three units in reliance on Cunningham's representation that the units were being transferred from another investor.  (*Id.* at ¶¶ 36-37)  On September 15, 2020, Cunningham sent Plaintiff the executed paperwork confirming Plaintiff's purchase of three units in exchange for $750,000.  (*Id.* at ¶ 38)

2

The complaint alleges that Plaintiff would not have purchased the three preferred units if it had known they were newly issued units or if it had been aware of the Wilson Loan and the Nuclear Option. (*Id.* at ¶¶ 39-41) Plaintiff did not learn about the existence of the Wilson Loan until more than a year later, in December of 2021. (*Id.* at ¶ 30) Defendants allegedly took steps to hide the Wilson Loan and its Nuclear Option from outside investors. (*Id.* at ¶¶ 42-76)

The case was transferred to this district on April 10, 2024. (D.I. 46; D.I. 51) The complaint asserted seven causes of action: (1) Count I, for violation of 15 U.S.C. § 78j and SEC Rule 10b-5; (2) Count II, for control person liability under 15 U.S.C. § 78t; (3) Count III, for violation of Florida Statute § 517.301; (4) Count IV, for common law fraud; (5) Count V, for breach of fiduciary duty; (6) Count VI, for conspiracy; and (7) Count VII, for aiding and abetting. (D.I. 1 at ¶¶ 83-127) Following motion practice under Rule 12(b)(6), the court dismissed Counts I, II, III, IV, and VII against Wilson and Rosen and dismissed Count VI as to Wilson, Rosen, and St. John.[2] (D.I. 62; D.I. 65) The court denied the motion to dismiss Count V for breach of fiduciary duty after finding that Wilson, Rosen, and St. John abandoned their argument. (*Id.*) Thus, Count V is the only cause of action that survived against all Defendants. Defendants now move for summary judgment on Count V. (D.I. 82)

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the

---

[2] Defendants Cunningham and TruthMD did not move for dismissal under Rule 12(b)(6).

nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322–23. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). The court must draw all reasonable inferences in favor of the nonmoving party without weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## III.    DISCUSSION

As an initial matter, the court addresses Plaintiff's position that Defendants' motion for partial summary judgment is barred by the law of the case doctrine because Defendants previously sought dismissal of Count V pursuant to Rule 12(b)(6). (D.I. 88 at 2-4) According to Plaintiff, the Report and Recommendation concluded that "Count V states a claim for fiduciary duty as a matter of law[.]" (*Id.* at 2) In fact, the Report and Recommendation concluded that Count V should not be dismissed because Defendants abandoned their argument in favor of dismissal in their reply brief. (D.I. 65 at 2) It is well-established that "[t]he law of the case doctrine does not preclude a grant of summary judgment in favor of a defendant whose motion to dismiss had been previously denied." *Tse v. Ventana Med. Sys., Inc.*, 123 F. Supp. 2d 213, 222 (D. Del. 2000), *aff'd*, 297 F.3d 210 (3d Cir. 2002); *see also Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 330 (3d Cir. 2016) (holding that the appellant's proposed application of the law of the case

doctrine amounted to a "critical misapplication of the fundamental distinction between a motion to dismiss under Rule 12(b)(6) and a motion for summary judgment under Rule 56."). Thus, Plaintiff's proposed application of the law of the case doctrine is not persuasive, and the court turns to the merits of Defendants' argument.

Count V of the complaint asserts a cause of action for breach of the fiduciary duties of loyalty and care "Against All Defendants." (D.I. 1 at ¶¶ 108-15) "A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010). The complaint alleges that Cunningham, St. John, Rosen, and Wilson owed Plaintiff fiduciary duties in their roles as officers of TruthMD, and they breached those duties by making material misrepresentations and omissions about Plaintiff's purchase of preferred membership units in September of 2020. (D.I. 1 at ¶¶ 108-15)

Defendants first argue that Count V fails as a matter of law to the extent it is brought against TruthMD because an entity cannot owe fiduciary duties. (D.I. 83 at 1) Plaintiff concedes that a fiduciary duty claim cannot be maintained against an LLC. (D.I. 88 at 5) Thus, Plaintiff's claim for breach of fiduciary duty fails a matter of law to the extent that it is brought against TruthMD because "[i]t is the fiduciaries serving the entity who owe fiduciary duties; the entity that is served does not." *Chen v. Howard-Anderson*, 87 A.3d 648, 693 (Del. Ch. 2014) (internal citations and quotation marks omitted).

Defendants further contend that Count V fails as a matter of law with respect to Cunningham, Rosen, St. John, and Wilson because the Operating Agreement exculpates them

from liability for alleged breaches of fiduciary duty. (D.I. 83 at 2-3) Specifically, the Operating Agreement provides that,

> To the full extent permitted by applicable Law, no Covered Person[3] shall be liable to the Company or any other Person who has an interest in or claim against the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement[.]

(D.I. 83, Ex. 2 at § 10.1(ii)) According to Defendants, such limitations on liability for breach of fiduciary duty are expressly permitted by 6 *Del. C.* § 18-1101(e), which states that

> [a] limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager, or other person to a limited liability company . . . provided, that a limited liability agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.

6 *Del. C.* § 18-1101(e).

Plaintiff contends that the exceptions to the exculpation clause at Section 10.1(ii) of the Operating Agreement allow its breach of fiduciary duty claim to proceed against Cunningham, St. John, Wilson, and Rosen. (D.I. 88 at 4) Specifically, the Operating Agreement states the exculpation clause does not apply when claims arise from

> (i) acts or omissions by such Covered Person that constitute "Cause" (as defined in such Covered Person's employment or consulting agreement with the Company, if and to the extent that such Covered Person has an employment or consulting agreement with the Company), that are not made in good faith, or that involve intentional misconduct or a knowing violation of applicable law, or (ii) any transaction from which such Covered Person derived an improper personal benefit.

(D.I. 83, Ex. 2 at § 10.1(ii))

---

[3] Plaintiff does not dispute that Cunningham, St. John, Rosen, and Wilson are "Covered Persons" under the Operating Agreement. (D.I. 88)

6

The first exception to the exculpation cause is comprised of three disjunctive components:[4] (1) acts or omissions by Covered Persons that constitute "Cause" as defined in an employment or consulting agreement; (2) acts or omissions by Covered Persons that are not made in good faith; or (3) acts or omissions by Covered Persons that involve intentional misconduct or a knowing violation of applicable law. (D.I. 83, Ex. 2 at § 10.1(ii)) Plaintiff does not dispute Defendants' contention that the first of these categories does not apply because no Defendant has an employment or consulting agreement with TruthMD for purposes of defining "Cause." (D.I. 83 at 4; Ex. A at ¶¶ 20-21; D.I. 88 at 4-5) However, Plaintiff cites pleaded allegations supporting its position that Defendants engaged in bad faith acts and omissions involving intentional misconduct under the second and third prongs of the exception. (D.I. 88 at 4) (citing D.I. 1 at ¶¶ 34-76).

A genuine dispute of material fact exists as to whether the exculpation clause in the Operating Agreement absolves Defendants of liability for breach of fiduciary duty. Specifically, the parties dispute whether the alleged misrepresentations and / or omissions by Cunningham, St. John, Wilson, and Rosen were made in bad faith or whether they involved intentional misconduct, thereby triggering an exception to the exculpation clause. The complaint alleges that Cunningham, St. John, Wilson, and Rosen knowingly and intentionally misrepresented and/or failed to disclose the Wilson Loan, the Nuclear Option, and/or the nature of the three units

---

[4] Defendants insist that "[t]he Cause Exception uses the conjunctive 'and' to connect the language related to acts or omissions constituting 'Cause' and the language pertaining to good faith, intentional misconduct, or knowing violation of applicable law." (D.I. 83 at 5) The quoted language from Section 10.1(ii) of the Operating Agreement contradicts Defendants' argument. While the conjunctive "and" is used in the Exculpation provision, the exceptions to exculpation are identified in the disjunctive, *i.e.*, "(i) acts or omissions by such Covered Person that constitute 'Cause' . . ., that are not made in good faith, *or* that involve intentional misconduct or a knowing violation of applicable law, *or* (ii) any transaction from which such Covered Person derived an improper personal benefit." (*Id.*, Ex. 1 at § 10.1(ii)) (emphasis added).

purchased by Plaintiff in September of 2020. (D.I. 1 at ¶¶ 21-23, 28-29, 86, 111-14) Defendants do not point to any evidence establishing that these averments are false. Drawing all reasonable inferences in favor of Plaintiff without weighing the evidence or making credibility determinations, I recommend that the court DENY Defendants' motion for partial summary judgment on Count V as it pertains to Cunningham, St. John, Rosen, and Wilson. *Reeves*, 530 U.S. at 150.

Defendants maintain that the motion should be granted because Plaintiff failed to provide a Rule 56(d) affidavit identifying additional facts it intends to adduce in discovery to oppose summary judgment. (D.I. 90 at 2-3) "[O]rdinarily a party urging a court to postpone ruling on a summary judgment motion pending completion of essential discovery should file an affidavit" under Rule 56(d). *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3d Cir. 1992). Here, the incomplete state of discovery nonetheless supports denying Defendants' motion for partial summary judgment. *Id.* at 845-46. Defendants' motion focuses on the allegations in the complaint and the terms of the Operating Agreement without relying on any additional discovery. (D.I. 83; D.I. 90) Plaintiff's letter brief specifies that depositions are necessary to determine whether Cunningham, St. John, Wilson, and / or Rosen acted in bad faith or engaged in intentional misconduct during their interactions with Plaintiff. (D.I. 88 at 1, 4) Based on these unique circumstances, denial of summary judgment is justified despite Plaintiff's failure to submit a formal affidavit under Rule 56(d).

## IV. CONCLUSION

For the reasons discussed above, I recommend that the court GRANT-IN-PART Defendants' motion for partial summary judgment as to Count V of the complaint. (D.I. 82) Specifically, I recommend that the court GRANT the motion as to TruthMD and DENY the motion as to Cunningham, St. John, Wilson, and Rosen.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 17, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE