**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RED DRAGON PARTNERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TRUTHMD, LLC, GEMMA CUNNINGHAM, CHARLES D. ROSEN, GARY L. WILSON, and MORGAN ST. JOHN,<br><br>Defendants. | ) | Civil Action No. 24-450-JLH-SRF |

**REPORT AND RECOMMENDATION**

Presently before the court in this securities action for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") is the motion to dismiss for lack of standing or for partial judgment on the pleadings, filed by defendants TruthMD, LLC ("TruthMD"), Gemma Cunningham ("Cunningham"), Morgan St. John ("St. John"), Gary L. Wilson ("Wilson"), and Dr. Charles D. Rosen ("Rosen") (collectively, "Defendants").[1] (D.I. 126) For the following reasons, I recommend that the court GRANT Defendants' partial motion to dismiss for lack of standing,[2] DISMISS Counts I and II of the complaint without prejudice, and decline to exercise supplemental jurisdiction over Plaintiff's causes of action brought under state law. Should the court adopt the recommendation on Defendants' partial motion to dismiss,

---

[1] The briefing and filings associated with the pending motion are found at D.I. 127, D.I. 128, D.I. 143, and D.I. 145.

[2] Defendants ask the court to "grant Defendants' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction and dismiss all claims and theories premised on the Wilson [L]oan's Nuclear Option." (D.I. 127 at 10) Although Defendants characterize their Rule 12(b)(1) motion to dismiss as a "partial" motion, they do not expressly identify the counts of the complaint that are impacted by their standing argument. Plaintiff's federal securities claims under the Exchange Act at Counts I and II of the complaint are premised on the so-called "Nuclear Option." (D.I. 1 at ¶¶ 83-96)

I further recommend that the court terminate as moot Defendants' motion for summary judgment, (D.I. 151), and Plaintiff's motion for partial summary judgment, (D.I. 155).[3]

## I. BACKGROUND

TruthMD is a limited lability company founded by Cunningham, Rosen, and nonparty Dr. Sunil Malkani to provide data solutions to managed care organizations, healthcare insurers, and government agencies. (D.I. 1 at ¶¶ 8, 15) Plaintiff Red Dragon Partners, LLC ("Plaintiff") is a limited liability company and a preferred member of TruthMD due to its purchase of five preferred units of TruthMD under the terms of the Third Amended and Restated Limited Liability Company Agreement ("Operating Agreement"). (*Id.* at ¶¶ 7, 19) Plaintiff's sole member is Dr. Shailesh Gupta ("Dr. Gupta"). (*Id.*) On January 18, 2023, Plaintiff brought this action for securities fraud in the Southern District of Florida against TruthMD and four of its five officers and managers in connection with Plaintiff's purchase of the five preferred units of TruthMD in three transactions occurring in 2017, 2019, and 2020. (*Id.*)

When Plaintiff bought the preferred units, Cunningham, Rosen, Wilson, and St. John were members of TruthMD's board of managers. (*Id.* at ¶¶ 16-18) They did not disclose that Wilson, who served as Chairman of the Board, had loaned TruthMD $400,000 on a short-term basis (the "Wilson Loan") in December of 2018. (*Id.* at ¶¶ 21-22, 29) If certain conditions did not occur under the terms of the Wilson Loan, Wilson would have the option to purchase a forty percent equity stake in TruthMD on favorable terms which would place him in a controlling position on the board of TruthMD (the "Nuclear Option"). (*Id.* at ¶¶ 22-23, 28)

---

[3] The Third Circuit has explained that the court "must begin every case[ ] with the question of jurisdiction" as a threshold matter because "a plaintiff's standing implicates this Court's Article III jurisdiction[.]" *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144 (3d Cir. 2023) (internal quotation marks and citations omitted).

Plaintiff purchased a unit of TruthMD in 2017 with the understanding that the unit was purchased directly from Cunningham, as opposed to a newly issued unit. (*Id.* at ¶ 32) In 2019, Plaintiff paid off a loan to TruthMD on behalf of one of its members and received that member's unit of TruthMD in the summer of 2020. (*Id.* at ¶ 33) Then, Cunningham approached Dr. Gupta in September of 2020 with a proposal for Plaintiff to purchase three additional units. (*Id.* at ¶ 34) Plaintiff engaged in discussions regarding the potential purchase of additional TruthMD units based on the understanding that the units would be transferred by an existing investor so as not to dilute the value for existing shareholders. (*Id.*)

On September 11, 2020, St. John and Cunningham sent Dr. Gupta a spreadsheet (the "Waterfall") prepared in connection with a potential acquisition of TruthMD, which had been edited by St. John to reflect three additional units to be purchased by Plaintiff. (*Id.* at ¶ 35) The Waterfall disclosed the Wilson Loan, but it did not disclose the Nuclear Option, which gave Wilson the option to obtain a substantial percentage of TruthMD shares at a nominal price if certain conditions were not met. (*Id.* at ¶¶ 23-28, 35, 71-74)

Dr. Gupta attended a meeting with St. John, Cunningham, and a third party on September 12, 2020, to discuss Plaintiff's interest in purchasing additional units. Plaintiff agreed to purchase the three units in reliance on Cunningham's representation that the units were being transferred from another investor. (*Id.* at ¶¶ 36-37) On September 15, 2020, Cunningham sent Plaintiff the executed paperwork confirming Plaintiff's purchase of three units in exchange for $750,000. (*Id.* at ¶ 38) The facts are undisputed that days later, effective September 17, 2020, the Nuclear Option language was dropped from the Amended and Restated Promissory Note. (D.I. 128, Ex. C)

The complaint alleges that Plaintiff would not have purchased the three preferred units if it had known they were newly issued units or if it had been aware of the Wilson Loan and the Nuclear Option. (D.I. 1 at ¶¶ 39-41) Plaintiff did not learn about the existence of the Wilson Loan until more than a year later, in December of 2021. (*Id.* at ¶ 30) According to Plaintiff, Defendants allegedly took steps to hide the Wilson Loan and its Nuclear Option from outside investors. (*Id.* at ¶¶ 42-76)

The case was transferred to this district on April 10, 2024. (D.I. 46; D.I. 51) The complaint asserted seven causes of action. The status of each cause of action is set forth in the chart below:

| | **TruthMD** | **Cunningham** | **St. John** | **Wilson** | **Rosen** |
|---|---|---|---|---|---|
| **Count I: Section 10(b)** | ✓ | ✓ | ✓ | Dismissed (D.I. 65) | Dismissed (D.I. 65) |
| **Count II: Section 20(a)** | N/A | ✓ | ✓ | Dismissed (D.I. 65) | Dismissed (D.I. 65) |
| **Count III: Fla. Stat. § 517.301** | ✓ | ✓ | ✓ | Dismissed (D.I. 65) | Dismissed (D.I. 65) |
| **Count IV: Fraud** | ✓ | ✓ | ✓ | Dismissed (D.I. 65) | Dismissed (D.I. 65) |
| **Count V: Breach of Fiduciary Duty** | Recommended dismissal (D.I. 142) | ✓ | ✓ | ✓ | ✓ |
| **Count VI: Conspiracy** | ✓ | ✓ | Dismissed (D.I. 65) | Dismissed (D.I. 65) | Dismissed (D.I. 65) |
| **Count VII: Aiding and Abetting** | ✓ | ✓ | ✓ | Dismissed (D.I. 65) | Dismissed (D.I. 65) |

(D.I. 1 at ¶¶ 83-127) Defendants now move for dismissal of all claims and theories premised on the Wilson Loan's Nuclear Option for lack of subject matter jurisdiction, or alternatively, entry

of judgment on the pleadings for Counts I to III, dismissal of Count II as derivative of Count I, and dismissal of all dilution-based claims. (D.I. 126)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). In reviewing a factual challenge, the court is not confined to the allegations in the complaint. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *See Lincoln*, 800 F.3d at 105; *Mortensen*, 549 F.2d at 891. Because standing is a jurisdictional matter, a motion to dismiss for lack of standing falls within the scope of Rule 12(b)(1). *See Perrong v. Liberty Power Corp., L.L.C.*, 411 F. Supp. 3d 258, 262 (D. Del. 2019).

## III. DISCUSSION

Defendants contend that Plaintiff lacks standing to bring claims and theories based on the Wilson Loan's Nuclear Option. (D.I. 127 at 7-10) "To establish standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018) (internal quotation marks and citations omitted). An injury in fact is "an invasion of a

legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[.]" *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484 (3d Cir. 1998).

According to Defendants, the alleged nondisclosure of Wilson's conversion right under the Nuclear Option does not constitute an injury in fact because it was never exercised before the Nuclear Option was removed from the Wilson Loan in a 2020 amendment and, therefore, could never be exercised. (D.I. 127 at 8-10) As a result, Defendants contend that Plaintiff cannot identify any dilution or other economic injury caused by the Wilson Loan's Nuclear Option. (*Id.*) Defendants also challenge whether any alleged injury was caused by Defendants' purported concealment of unit origin resulting from allegedly misleading Plaintiff concerning whether it was purchasing existing, not new, Series F units. Defendants argue that Plaintiff does not identify any dilution, change in percentage ownership, or other metric to support a claim of concrete harm. (*Id.* at 8) (citing D.I. 1 at ¶¶ 36-38)

Plaintiff responds to Defendants' standing argument under a heading entitled "The Complaint Alleges and the Evidence Shows Injury in Fact," but its argument contains no citations to or discussion of the evidence. (D.I. 143 at 6) Plaintiff does not deny Defendants' assertion that the Nuclear Option was never exercised and was dropped from the Wilson Loan in a 2020 amendment before it could be exercised. (D.I. 128, Ex. C) Plaintiff also fails to separately address Defendants' position that there is no injury in fact resulting from TruthMD's alleged sale of dilutive new units instead of existing units. Instead, Plaintiff contends that its request for rescission is sufficient to establish an injury in fact. (D.I. 143 at 7-8)

I recommend that the court dismiss Counts I and II for lack of standing under Rule 12(b)(1) because Plaintiff does not identify an injury in fact caused by the unexercised Nuclear

Option in the Wilson Loan and/or the purchase of three additional Series F units. The complaint alleges that the value of Plaintiff's units was inflated at the time of purchase due to the dilution and control threats posed by the Nuclear Option, but it does not plead an actual loss in value tied to Plaintiff's purchase. (D.I. 1 at ¶¶ 87, 89) There is no dispute that the Nuclear Option was never exercised and can no longer be exercised. (*Id.* at ¶¶ 22, 73, 89; D.I. 128, Ex. C) Plaintiff acknowledges that it must establish economic loss and loss causation to support its securities fraud claims, but it alleges only "economic loss in the form of moneys paid for units sold under false pretenses" without showing that the purchase of those units actually resulted, or could result, in an economic loss. (D.I. 143 at 7) Consequently, Plaintiff does not establish a concrete economic injury in fact for purposes of Article III standing. *See Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 146 (D.N.J. 2025) ("[T]hreadbare allegations that the plaintiff paid a price premium is not enough to show an injury in fact." (internal quotation marks and citation omitted)); *see also In re Johnson & Johnson*, 903 F.3d at 287 ("[E]ven at the pleading stage, a plaintiff must set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that she suffered at least *some* economic injury.").

Plaintiff also requests rescission, which is "a contract remedy letting one party to the contract un-make it for some legally sufficient reason, such as . . . fraud." *Twardzik v. HP Inc.*, C.A. No. 21-396-SB, 2022 WL 606092, at *3 (D. Del. Jan. 25, 2022) (internal quotations and citations omitted). The remedy is intended to restore the status quo "by requiring the buyer to return what he received from the seller" in exchange for "the consideration paid for such security with interest thereon, less the amount of any income received thereon." *Pinter v. Dahl*, 486 U.S. 622, 641 n.8 (1988). According to Plaintiff, rescission alone may constitute a sufficient injury-in-fact for securities fraud under Section 10(b). (D.I. 143 at 7-8) However, Plaintiff cites no

case authority supporting a rescission-only remedy in the context of a claim for securities fraud under Section 10(b).[4] The Supreme Court has held that the question of whether rescission is available in a securities case brought under Section 10(b) is "an unsettled one." *Randall v. Loftsgaarden*, 478 U.S. 647, 661 (1986).

The Third Circuit has questioned whether rescissionary relief "is ever appropriate for defrauded buyers under Rule 10b-5." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 203 n.25 (3d Cir. 1990). As the Third Circuit explained,

> [t]he rescissional measure permits the defrauded securities buyer to place upon the defendant the burden of any decline in the value of the securities between the date of purchase and the date of sale even though only a portion of that decline may have been proximately caused by the defendant's wrong. . . . Under these circumstances, the rescissional measure is unjust insofar as it compensates an investor for the nonspecific risks which he assumes by entering the market. Losses thus accruing have no relation to either the benefits derived by the defendants from the fraud or to the blameworthiness of their conduct.

*Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 249-50 (3d Cir. 2001) (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 555 (5th Cir. 1981), *modified on other grounds*, 459 U.S. 375 (1983)). Thus, the Third Circuit is "extremely hesitant to award rescissionary damages and instead appl[ies] an 'out of pocket measure'" to damages in most securities cases brought under

---

[4] Plaintiff cites three cases, none of which is persuasive. In *Kusner v. First Pennsylvania Corp.*, the Third Circuit held that a plaintiff alleging damages in connection with misrepresentations or omissions made in the purchase or sale of securities had standing, but there is no indication that the alleged injury involved rescission. 531 F.2d 1234, 1237-39 (3d Cir. 1976). In *Volk v. D.A. Davidson & Co.*, the Ninth Circuit determined that an injury in a securities fraud case arises at the time the inventor enters into a transaction as a result of a material misrepresentation, even if the actual monetary loss does not occur until later. 816 F.2d 1406, 1412 (9th Cir. 1987). The court did not address standing. In *Ferry v. DF Growth REIT*, 2024 WL 5011949 (S.D. Cal. Dec. 6, 2024), the court analyzed standing under Section 25401 of the California Corporations Code, as opposed to Section 10(b). The other cases cited by Plaintiff generally describe the contours of the injury in fact requirement. *See Danvers Motor Com, Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005); *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Section 10(b). *Id.* at 250. Out-of-pocket losses are calculated as the difference between the purchase price of a security and its true value. *Id.* at 249; *see also Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1207 (9th Cir. 2012) ("[W]e are not convinced that a suit under section 10(b) obviates the need for proving economic loss and loss causation.").

Plaintiff's claim for rescission is untethered to any allegations of a monetary loss associated with the Wilson Loan's unexercised Nuclear Option. (D.I. 1 at ¶¶ 86-87) Instead, Plaintiff's theory of liability is "premised on a future contingent event" that never occurred and no longer presents a risk. (D.I. 145 at 2) Any calculation of rescissionary relief would therefore compensate Plaintiff for market risks unrelated to the alleged misrepresentations and omissions, illustrating the policy reasons underlying the Third Circuit's "extreme[ ] hesita[tion] to award rescissionary damages" for securities fraud under Section 10(b). *Mathews*, 260 F.3d at 250. Because Plaintiff's claims based on the unexercised Nuclear Option in the Wilson Loan are not associated with a concrete harm, Plaintiff fails to satisfy its burden to show an injury-in-fact for purposes of the standing inquiry. *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005).

Defendants also challenge the sufficiency of the injury associated with Plaintiff's claims that the three Series F Units purchased in September of 2020 were newly-issued units instead of existing units. (D.I. 127 at 8) Specifically, Defendants allege that Plaintiff

> does not quantify dilution, allege change in percentage ownership, state economic loss from the issuance, identify a price premium paid, identify a diminished per-unit value, identify any post-purchase valuation decline specifically attributable to the 'newly issued' status, provide metrics, allege before-and-after ownership percentages, describe cap table changes, or tie damages to any incremental dilution from issuing new units versus acquiring existing ones.

(D.I. 127 at 8-9) Plaintiff does not refute any of these assertions in its responsive arguments on standing. To the contrary, Plaintiff later disavows a claim for dilution of share value in response to Defendants' Rule 12(c) motion for judgment on the pleadings:

> The fundamental and fatal flaw in Defendants' argument is that Red Dragon's claimed damages are rescissionary, not dilutional. Indeed, Red Dragon does not claim damages arising from a dilution in overall unit values at TruthMD. Rather, Red Dragon seeks rescissionary damages because Defendants[ ] lied and omitted material facts on which it relied in purchasing units it would not otherwise have purchased.

(D.I. 143 at 9)

Plaintiff has not met its burden to establish an imminent or concrete injury in fact associated with the sale of new Series F units instead of existing ones in response to Defendants' factual challenge to Plaintiff's standing. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (explaining that, on a factual challenge to standing, the court must weigh the evidence, and "no presumptive truthfulness attaches to plaintiff's allegations"). The complaint alleges that the sale of new units "inflated the value of all Units and harmed Plaintiff and shareholders[,]" and the newly-issued shares "would dilute other investors." (D.I. 1 at ¶¶ 4, 36, 40, 89) Plaintiff offers no evidence to support these allegations and instead appears to retreat from any suggestion that it seeks a remedy for the dilution of shares. (D.I. 143 at 9) On a factual challenge to standing, Plaintiff's conclusory allegations of harm in the complaint are insufficient to establish an injury in fact. *See Mortensen*, 549 F.2d at 891 ("[T]he plaintiff will have the burden of proof that jurisdiction does in fact exist.").

Although Defendants do not specify which counts of the complaint are subject to their "partial" motion to dismiss under Rule 12(b)(1), I recommend that the court dismiss at least the federal securities claims at Counts I and II for failure to satisfy the injury-in-fact requirement of

the standing analysis. To the extent that the state law claims at Counts III to VII extend beyond claims and theories premised on the Wilson Loan's Nuclear Option and/or Plaintiff's purchase of Series F units in September of 2020, I recommend that the court decline to exercise supplemental jurisdiction and dismiss Counts III to VII without prejudice. *See Kooker ex rel. Hecla Mining Co. v. Baker*, 497 F. Supp. 3d 1, 6 (D. Del. 2020); 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the reasons discussed above, I recommend that the court:

1. GRANT Defendants' partial motion to dismiss for lack of subject matter jurisdiction and DISMISS without prejudice Counts I and II of the complaint for lack of standing, (D.I. 126);
2. Decline to exercise supplemental jurisdiction over the remaining state law claims at Counts III to VII and DISMISS those claims without prejudice; and
3. Terminate as moot Defendants' pending motion for summary judgment, (D.I. 151), and Plaintiff's partial motion for summary judgment, (D.I. 155).

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **October 20, 2026,** for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sates Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir, 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation

marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Report and Recommendation was issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: October 13, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE